[No. 5868.]

The Central Life Assurance Society v. Mulford.

1. **Evidence—Parol to Vary Writings—**All previous conversations merge in the written contract finally adopted.—(243)

2. **Deceit—**Party to a contract entered into with full knowledge of its contents will not be allowed to say that he was induced to enter therein by a previous representation, contradicted by the express terms of the contract.—(243)

An assurance as to the amount of commissions which will accrue to the agent of an insurance company from an agency which he is solicited to accept, is a mere opinion, and, even if false, is not actionable.—(243)

3. **Contracts — Rescission —** Party seeking rescission of a contract must make his election within a reasonable time after the knowledge of the matters which entitle him to rescind; and he must be able to restore the other party to his former position, and must offer to do so.—(244)

Where plaintiff sought the cancellation of a policy of insurance which had remained in force for a whole year, so that, if the beneficiary had died, the insurer would have been obliged to pay the amount of the policy, it was held that compensation must be made to the company for this contingent liability.—(244)

Rescission cannot be awarded for the default of defendant to pay stipulated commissions, where the plaintiff has, without excuse, refused to perform the duties required, to entitle him to such commissions.—(245)

4. **Equity—Practice—**The verdict of the jury is merely advisory.—(246)

*Appeal from Denver District Court* — Hon. Booth M. Malone, Judge.

Messrs. Bicksler, Bennett & Nye, for appellant.

No appearance for appellee.

Mr. Justice Campbell delivered the opinion of the court:

Plaintiff Mulford brought this action to secure the cancellation of a policy of insurance, issued to him by the defendant company, upon the ground that he was induced to take it out through false and fraudulent representations of the defendant through its general agent. He also seeks to recover the amount of the first annual premium which he had paid thereon. The cause of action stated in the complaint is equitable. The court, in the proper exercise of its discretion, impaneled a jury and submitted to them certain questions of fact for their finding. Answers to some of these questions favor plaintiff, others the defendant, as will hereinafter appear. At the close of plaintiff's evidence, defendant moved for a nonsuit, which was denied; and when its own evidence and plaintiff's rebuttal were in, and after the findings of the jury were returned, defendant moved for judgment upon the findings, which motion was denied and the ruling excepted to. The court thereupon entered judgment in favor of plaintiff for a part of his claim, from which defendant has appealed.

The facts material to this review are: That defendant, an old-line life insurance company, through its general agent in Colorado, approached plaintiff to get him to become its financial director for the county of Denver in the state of Colorado, the general policy of defendant being to organize every state by counties, so as to enlarge its business and enhance its prosperity. Its general plan contemplated that each county, whenever at least $20,000 of business is written therein, should be entitled to have one of its policy-holders as a financial director. After several interviews between plain-

tiff and defendant's general agent, plaintiff consented to become the financial director of Denver county, and made a written application to the company for that purpose, and signed a contract with the company which defined their relative rights and duties. As a condition precedent to becoming such director, the rules of the company and this written contract required that plaintiff should take out a policy in the company in the sum of at least $5,000, which he did, and paid the annual premium, amounting to $344. Plaintiff, in his complaint, alleges that he was induced to make his application, to enter into the contract, and to take out the policy and pay the first annual premium, through fraudulent representations of defendant's general agent, in that the latter assured him that the company had already written insurance in the sum of $25,000 in Denver county, and that $50 in money was already in possession of the general agent to pay to plaintiff as the share of the commissions belonging to the financial director on such business, as soon as he signed the contract and complied with its various provisions; that the general agent also promised to be diligent in soliciting business for the company during the lifetime of plaintiff's contract, which was to continue for ten years; and guaranteed to plaintiff that his commission for the first year would be not less than $400, and thereafter would increase. These are the material charges of fraudulent conduct which the plaintiff makes against defendant, and to which the evidence, if any, was directed.

Turning to the financial director's contract, we find that it does not provide commissions for plaintiff upon the receipt of premiums upon business theretofore written, but only upon premiums at a specified rate paid upon business secured in Denver county after, and during, the term of the contract.

'It is true that the jury found that plaintiff entered into the engagement with defendant as the result of the representations mentioned, and took out his policy and paid the premium in reliance upon such promises; which representations, as to past transactions, were untrue, and as to subsequent ones, unfulfilled. But whatever may have been the representations with reference to past transactions, though plaintiff testified that they did, it is evident that they did not, and could not constitute the inducement for his entering into his engagement. The written contract which he signed, fully aware of its contents, specifically defines his rights and duties, and his compensation thereunder, as well as the rights and obligations of defendant. His compensation was fixed by its terms at a certain per cent. of the premiums paid on the policies which were to be written after the contract was made, and he was to receive nothing upon past business. All previous conversations and negotiations are presumed to be merged into the written contract, and the rights of the parties must be determined by its provisions. Of course if fraudulent representations made by the agent, which are material and were a moving consideration to plaintiff for entering into the contract, were established, he would be entitled to a rescission, provided he, himself, was not in fault, and did what equity requires in such cases. But the written contract shows conclusively that no representations as to past or then present facts, such as charged, could have moved plaintiff to make his contract, and the writing also refutes his claim that any representations could have been made of commissions for past business, or if they were made, that he relied on them, for he signed the contract which restricted him to commissions on future business only.—*Larimer County Land Imp. Co. v. Cowan et al.,* 5 Colo. 320.

But if it be assumed, for the purposes of this case, that plaintiff was induced by fraudulent representations to enter into the contract, it does not necessarily follow that he is entitled to have his policy of insurance canceled or to recover the first annual premium which he paid. The taking out of insurance was only one of the things which plaintiff was to do under the terms of the financial director's contract. There were other things which he must do before he is entitled to commissions. One of them is that he should diligently assist defendant, in certain particulars mentioned, in the advancement of its business within his county. The jury found that he did not do so, and further found that he was not justified in his refusal.

There is another principle that defeats a recovery by plaintiff. When a party seeks to have a contract rescinded upon the ground of fraud, he must place, or offer to put (with ability to perform) the other party to the contract in the same position he was in before it was made. He must also, when he elects to rescind, do so within a reasonable time. The jury found that plaintiff did not elect to rescind within a reasonable time, but was guilty of delay. Under the contract of insurance, of which plaintiff's brother was the beneficiary, the assured had the right to change the beneficiary at any time during the life of the policy, provided the same had not been assigned. During the first year, no change in the beneficiary was made, and the policy was not assigned, and during all this time the policy being kept alive by the payment of the annual premium, in case the assured died the company would have been obliged to pay to the beneficiary the amount of the policy.—*Glanz v. Gloeckler*, 104 Ill. 573. Some corresponding, or equivalent, compensation certainly was due the company for this contingent liability.

But if plaintiff was not guilty of laches in electing, within a reasonable time, to rescind, and even if he had tendered to the company the value which the policy had been to him and his beneficiary up to the time of his election, nevertheless there are other potent reasons why the judgment cannot stand. If plaintiff was equally at fault with defendant in violating the contract, he ought not while he continues in default, to be permitted to have it rescinded. The jury found, and the evidence is all that way, that plaintiff declined and refused to assist the company in securing new business, as he agreed to do, and that he was not justified in the refusal. He was not entitled to any commissions upon moneys received upon new business during the life of his contract unless he kept the engagements upon his part. The contract between plaintiff and defendant was mutual and reciprocal. The benefits accruing to plaintiff were dependent upon his performance of a correlative duty. The only basis, under the evidence, for his claim that he is entitled to have the policy of insurance canceled and the amount of the premium paid returned to him, is that defendant did not account to him for the amount of the commission to which he is entitled, and did not perform other of its promises. Since defendant was under no obligation with respect thereto, unless plaintiff observed the provisions of the contract incumbent on him to perform, it necessarily follows that his right to rescind and the return of his premium was not established, on account of his failure to perform his agreement with the company, which agreement on his part was the consideration for the promise by the defendant of commissions. The same observation is to be made concerning the alleged representations of the amount of commission plaintiff might expect. They are merely expressions of opinion, not actionable, and

must have been so understood by plaintiff. Neither party could, with accuracy, predict what the future would bring. As to such representations, and also as to the one guaranteeing to plaintiff a certain amount of commission for the first year, even if they were made as plaintiff testifies, plaintiff's failure to keep his own promises absolves defendant, for plaintiff has himself to blame, in part at least, that the anticipated volume of business was not done.

We have disposed of this case upon the assumption, which the record bears out, that the final judgment of the court was based upon the findings of the jury. Further assuming that the jury's findings were correct, a judgment in plaintiff's favor is not sustained thereby for the reasons given. Of course, where the cause of action is equitable, the submission of issues of fact to a jury is entirely discretionary with, and their findings are only advisory to, and may be modified or wholly set aside and findings of its own may be made by, the court. This, however, is not a case where the court's independent findings, or findings different from those of a jury, are involved, for the jury's answers to the special interrogatories were approved by the court and made the basis of its judgment. It should be reversed and the cause remanded.

*Reversed and remanded.*

Chief Justice Steele and Mr. Justice Gabbert concur.